UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **ADVOCACY CENTER** | : | **CIVIL ACTION NO. 18-0934** |
| **VS.** | : | **JUDGE TERRY A. DOUGHTY** |
| **LOUISIANA TECH UNIVERSITY AND PRESIDENT LESLIE GUICE** | : | **MAG. JUDGE KAREN L. HAYES** |

**REPORT AND RECOMMENDATION**

Before the undersigned magistrate judge, on reference from the District Court, is a motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted [doc. # 13] filed by defendants Louisiana Tech University and President Leslie Guice. The compound motion is opposed. For reasons assigned below, it is recommended that the motion to dismiss for lack of subject matter jurisdiction be GRANTED, and that plaintiff's complaint, as amended, be dismissed, without prejudice.

**Background**

On July 18, 2018, the Advocacy Center[1] filed the instant suit seeking declaratory and injunctive relief, plus attorney's fees, against Louisiana Tech University[2] and President Leslie

---

[1] According to the complaint, as amended, "Plaintiff Advocacy Center is the designated Protection and Advocacy (P&A) system for individuals with disabilities in the State of Louisiana pursuant to the Developmental Disabilities Assistance and Bill of Rights Act of 2000 (PADD), 42 U.S.C. §§ 15001, et seq." (First Amend. Compl., ¶2 ).

[2] Louisiana Tech University is a public institution of higher education located in Ruston, Louisiana. (First Amend. Compl., ¶ 14).

Guice[3] (collectively, "Louisiana Tech") because of defendants' failure to make its public buildings, paths of travel, and places of public accommodation accessible to persons with disabilities who have mobility and vision impairments in violation of Title II of the Americans with Disabilities Act, 42 U.S.C. §12131 et seq. (the "ADA"), and § 504 of the Rehabilitation Act of 1973, 29 U.S.C. §794 (the "Rehabilitation Act"). (Compl.).

On October 24, 2018, the Advocacy Center amended its complaint to assert, *inter alia*, that it was bringing suit on its own behalf, on behalf of its employees, and "on behalf of persons with visual and mobility impairments who attend, reside on the campus of, or seek access to [Louisiana Tech]." (First Amend. Compl. ("FAC")). The FAC also included additional allegations in an attempt to shore up the Advocacy Center's standing to bring suit. *Id*.

On December 1, 2018, Louisiana Tech filed the instant motion to dismiss the FAC[4] for lack of subject matter jurisdiction and for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(1) and 12(b)(6).[5] Louisiana Tech contends that the case is subject to dismissal because the Advocacy Center lacks standing, both organizational and representative/associational, as required to prosecute the suit. Louisiana Tech further argues that

---

[3] Leslie Guice is the President of Louisiana Tech University and serves as the "head" of the university pursuant to Louisiana Revised Statute § 17:3303. (First Amend. Compl., ¶ 15). Plaintiff sued Guice in his official capacity only. *Id*.

[4] "An amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading." *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (citing *Boelens v. Redman Homes, Inc.*, 759 F.2d 504, 508 (5th Cir.1985)). Here, the FAC does not refer to or incorporate the original complaint. Accordingly, the FAC is the sole, operative pleading before the court.

[5] The motion also invoked Rule 12(h)(3). By its terms, however, that provision typically applies when the court, on its own, determines that it lacks subject matter jurisdiction.

the FAC fails to state a claim for relief because: 1) neither the Rehabilitation Act, nor ADA Title II require every building to be accessible to every person; 2) the Advocacy Center is not a qualified individual for any Louisiana Tech program; and 3) it comprises only bare allegations of violations of the 2010 ADA Accessibility Guidelines (the "ADAAG").

The Advocacy Center filed its opposition to the motion to dismiss on December 24, 2018. [doc. # 18]. A flurry of replies and sur-replies followed – the most recent filed on January 16, 2019. *See* doc. #s 17-24. In light of the current sustained lull in briefing, the court finds that the matter is ripe.

## Analysis

### I. Standing

Standing, for purposes of the federal courts, comes in two varieties: "Article III standing, which enforces the Constitution's case-or-controversy requirement, and prudential standing, which embodies judicially self-imposed limits on the exercise of federal jurisdiction." *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11–12, 124 S.Ct. 2301, 2308–09 (2004), abrogated in part by *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 S.Ct. 1377 (2014) (internal citations and quotation marks omitted).

A defect in the court's Article III or constitutional standing implicates the court's subject matter jurisdiction, and therefore, is properly raised by a party via Rule 12(b)(1). *See Cadle Co. v. Neubauer*, 562 F.3d 369, 374 (5th Cir.2009) (citation omitted); *Moore v. Bryant*, 853 F.3d 245, 248 n.2 (5th Cir.2017) ("Dismissals for lack of Constitutional standing are granted pursuant to Rule 12(b)(1)"). Further, "[w]hen a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before

addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir.2001).[6]

"A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) (quoting *Nowak v. Ironworkers local 6 Pension Fund*, 81 F.3d 1182, 1187 (2nd Cir. 1996)). The party seeking to invoke jurisdiction bears the burden of demonstrating its existence. *See Ramming, supra*; *Howery v. Allstate Ins. Co.*, 243 F.3d 912, 916 (5th Cir. 2001). "[T]here is a presumption against subject matter jurisdiction that must be rebutted by the party bringing an action to federal court." *Coury v. Prot*, 85 F.3d 244, 248 (5th Cir. 1996) (citation omitted). Moreover, because this action is at the motion to dismiss stage, plaintiff must "clearly . . . allege facts demonstrating" each element of Article III standing. *Spokeo, Inc. v. Robins*, ___ U.S. ___, 136 S.Ct. 1540, 1547 (2016) (citation omitted); *see also NOLA Health Sols., LLC v. New Orleans Reg'l Physician Hosp. Org., Inc.*, No. 18-7007, 2019 WL 112031, at *5 (E.D. La. Jan. 4, 2019).

"A court can find that subject matter jurisdiction is lacking based on (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Enable Mississippi River Transmission, L.L.C. v. Nadel & Gussman, L.L.C.*, 844 F.3d 495, 497 (5th Cir.2016) (citations and internal quotation marks omitted).

The United States Constitution, via Article III, limits federal courts' jurisdiction to

---

[6] Albeit, dismissal for lack of prudential standing is considered via Rule 12(b)(6). *Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n.2. (5th Cir.2011).

"cases" and "controversies." *Sample v. Morrison*, 406 F.3d 310, 312 (5th Cir.2005) (citing U.S. CONST. ART. III, § 2). The "law of Article III standing, which is built on separation-of-powers principles, serves to prevent the judicial process from being used to usurp the powers of the political branches." *Town of Chester, N.Y. v. Laroe Estates, Inc.*, ___ U.S.___, 137 S.Ct. 1645, 1650–51 (2017) (citation omitted). Thus, "the standing question is whether the plaintiff has alleged such a personal stake in the outcome of the controversy as to warrant [its] invocation of federal-court jurisdiction and to justify exercise of the court's remedial powers on his behalf. *Warth v. Seldin*, 422 U.S. 490, 498–99, 95 S.Ct. 2197, 2205 (1975) (citation and internal quotation marks omitted). The Article III standing requirements apply to claims for injunctive and declaratory relief. *See Seals v. McBee*, 898 F.3d 587, 591 (5th Cir.2018); *Lawson v. Callahan*, 111 F.3d 403, 405 (5th Cir.1997).

"[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Town of Chester, N.Y. v. Laroe Estates, Inc.*, ___ U.S. ___, 137 S.Ct. 1645, 1650–51 (2017) (citations omitted). When deciding a motion to dismiss for want of standing, the trial court must accept as true all material allegations of the complaint, and must construe the complaint in favor of the plaintiff. *Warth, supra*.

Article III standing is comprised of three essential elements. *Spokeo, supra* (citation omitted). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision. The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing

these elements." *Id*. (internal citations omitted).[7]

An organization or association such as the Advocacy Center may establish injury-in-fact standing in one of two ways: (1) organizational, i.e., in its own name, or (2) associational/representational, which derives from the "standing of the association's members, requiring that they have standing and that the interests the association seeks to protect be germane to its purpose." *OCA-Greater Houston v. Texas*, 867 F.3d 604, 610 (5th Cir.2017) ("*OCA*") (citing *inter alia*, *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 341–42, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977)). The court will address each basis for standing, in turn.

    a)    <u>Organizational Standing</u>

To satisfy "organizational standing," the organization must meet the same standing test that applies to individuals. *Ass'n of Cmty. Organizations for Reform Now v. Fowler*, 178 F.3d 350, 356 (5th Cir.1999) ("*Fowler*") (citing *inter alia*, *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378–79, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982)). Therefore, the plaintiff must demonstrate that it "has suffered 'injury in fact,' that the injury is 'fairly traceable' to the actions of the defendant, and that the injury will likely be redressed by a favorable decision." *Id*. (quoted sources omitted).

Relying on *Havens, supra*, the Fifth Circuit has recognized that "an organization may

---

[7] Even if a plaintiff establishes Article III standing, the courts may consider whether prudential standing principles nonetheless militate against hearing the plaintiff's claims. *Cibolo Waste, Inc. v. City of San Antonio*, 718 F.3d 469, 474 (5th Cir.2013) (citation omitted). Prudential standing
> encompasses the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked.

*Id*. (internal quotation marks and citation omitted).

establish injury in fact by showing that it had diverted significant resources to counteract the defendant's conduct . . ." *N.A.A.C.P. v. City of Kyle, Tex.*, 626 F.3d 233, 238 (5th Cir.2010) ("*City of Kyle*") (citing *Havens*, 455 U.S. at 379, 102 S.Ct. 1114). In other words, "the defendant's conduct significantly and perceptibly impaired the organization's ability to provide its activities—with the consequent drain on the organization's resources . . ." *Id*. (citation and internal quotation marks omitted).

The injury in fact requirement under Article III is qualitative, not quantitative. *Fowler*, 178 F.3d at 357-358. Therefore, although the alleged injury must be concrete and particularized and actual or imminent, it need not measure more than an "identifiable trifle." *Id*. Nonetheless, an "organization cannot obtain standing to sue in its own right as a result of self-inflicted injuries, i.e., those that are not fairly traceable to the actions of the defendant." *Id*. (citation and internal quotation marks omitted). Accordingly, "[i]t is fundamental that no plaintiff may claim as injury the expense of preparing for litigation, for then the injury-in-fact requirement would pose no barrier." *OCA*, 867 F.3d at 611. Moreover, although an organization conceivably could have standing if it incurred other costs, e.g., monitoring expenses, the organization still must show that it would not have incurred these costs in the absence of defendant's illegal conduct. *Fowler, supra*. Ultimately, to establish standing in its own right, an organization must allege facts to show that it devoted resources to *counteract* defendant's alleged unlawful practices. *Fowler*, 178 F.3d at 360 (citations omitted).

Here, the Advocacy Center alleged that it received several requests for assistance from students at Louisiana Tech complaining that the campus was not architecturally accessible. (FAC, ¶ 18). The Advocacy Center also received several requests from individuals attending

7

Louisiana Tech related to disability discrimination, apart from architectural accessibility. *Id*.[8] As a result of these complaints, the Advocacy Center conducted a two-day site inspection of the "portions of the [Louisiana Tech] campus that were identified as inaccessible by student reporters." *Id*., ¶ 21. The two-day investigation revealed numerous barriers to accessibility for mobility- and vision-impaired individuals on the Louisiana Tech campus. *Id*.

According to the FAC, Louisiana Tech's inaccessibility directly impacted the Advocacy Center because the Advocacy Center has employees with mobility impairments who are unable to meet safely with clients or attend meetings on the Louisiana Tech campus. *Id*., ¶ 31. One such Advocacy Center employee was Jonathan Trunnell who uses a manual wheelchair. *Id*., ¶ 32. Trunnell is employed as a staff attorney and represents the Advocacy Center in this case. *Id*. Trunnell conducted an outreach visit to the Louisiana Tech campus, which included posting flyers to solicit public input regarding the inaccessibility of the Louisiana Tech campus. *Id*. During his visit, Trunnell was unable to enter numerous buildings, including the post office and the Howard Center for the Performing Arts. *Id*. He also was inconvenienced by the circuitous routes he had to take because of sidewalk issues. *Id*.

The Advocacy Center concluded that,

> [a]s a result of the violations alleged in this Complaint, the Advocacy Center has had to divert significant resources to counteract LA Tech's conduct. These diversions include, but are not limited to, sending employees located in New

---

[8] Specifically, the Advocacy Center was notified that a student with cerebral palsy, who used a power wheelchair and a service animal, "[was] experiencing great difficulty traveling between buildings, opening many of the doors, and using the restrooms on campus. These difficulties were directly attributable to the lack of accessible pathways between building and accessible feature[s] in the restrooms." *Id*., ¶ 19. Plaintiff also was made aware of a vision impaired student who fell because of an uneven sidewalk on Louisiana Tech's campus. *Id*., ¶ 20.

> Orleans to investigate complaints on the LA Tech campus, soliciting public input from frequenters to the LA Tech campus, and corresponding with Defendants about the ongoing inaccessibility of its campus. This diversion of resources directly impedes the ability of the Advocacy to fulfill its other responsibilities under the P&A statutes.

*Id*., ¶ 35.

In *OCA*, the Fifth Circuit explained that the "critical distinction" when deciding whether pre-litigation expenses represent an organizational injury in fact is whether or not the expenses are "related to litigation." *OCA*, 867 F.3d at 612. In *OCA*, the plaintiff organization suffered non-litigation-related injury when it sought to mitigate the effect of defendant's conduct by educating its members on how to overcome the effect of defendant's challenged conduct. *Id*.

Here, plaintiff alleged that it sent a staff attorney to Louisiana Tech to inspect, investigate and to solicit public input regarding the inaccessibility of the campus. These activities, however, are not measured to counteract or overcome the effects of Louisiana Tech's discriminatory conduct. Instead, Mr. Trunnell's visit was in the nature of a fact-finding mission. Of course, Mr. Trunnell's two day investigation need not have been designed for purposes of litigation – assuming Louisiana Tech had redressed the access issues uncovered by Mr. Trunnell to the satisfaction of the Advocacy Center. However, this did not occur. Rather, it is evident that in the event that conciliation efforts failed to bear fruit, then the Advocacy Center intended to use the information gathered from the inspection, plus the "public input" it obtained, for purposes of the instant litigation. Therefore, the court necessarily finds that the expenses incurred by Mr. Trunnell's visit to Louisiana Tech were related to litigation, and not for purposes of overcoming the effects of Louisiana Tech's non-compliant campus.

Furthermore, plaintiff did not set forth facts to establish any specific projects or activities

from which it had to divert resources as a result of the costs it incurred to send Mr. Trunnell to Louisiana Tech, or from the time it spent engaging in correspondence with defendants. Rather, the FAC is limited to conclusory allegations of costs incurred, which does not suffice. *See* FAC ¶¶ 31-37; *City of Kyle*, 626 F.3d at 238–39 (plaintiff failed to demonstrate that the diversion of resources concretely and "perceptibly impaired" its ability to carry out its purpose); *Hunter v. First United Bank & Tr. Co.*, No. 12-0374, 2012 WL 7004154, at *7 (E.D. Tex. Dec. 11, 2012), R&R adopted, 2013 WL 419227 (E.D. Tex. Feb. 1, 2013) (plaintiff's "vague statements that it has been injured because it has had to divert resources are insufficient to establish injury-in-fact."). Therefore, at most, plaintiff established no more than a non-cognizable " setback to the organization's abstract social interests." *City of Kyle, supra*.

Insofar as plaintiff contends that Louisiana Tech's architectural barriers caused it to suffer injury because of its inability to send its mobility impaired employees/advocates (such as Ashley Volion) to the campus to perform "outreach and training," plaintiff has not demonstrated a concrete and imminent injury. (FAC, ¶ 33). The FAC does not contain any facts to suggest that it previously sent any of its employees (mobility impaired or otherwise) to conduct these activities at Louisiana Tech in the past, or that it has any definite plans to do so in the future.[9]

When, as here, plaintiff is seeking to obtain standing for injunctive relief, it must show that there is reason to believe that it would directly benefit from the equitable relief sought. *Plumley v. Landmark Chevrolet, Inc.*, 122 F.3d 308, 312 (5th Cir.1997) (citation omitted).

---

[9] The Advocacy Center artfully alleged that, over the past three years, it had received forty-six requests for services related to "rights violations" at institutions of higher learning in Louisiana. (FAC, ¶ 8). Tellingly, however, plaintiff did not specify how many of the complaints stemmed from conditions at Louisiana Tech.

Therefore, "plaintiff must face a threat of present or future harm." *Id*.[10] Indeed, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *City of Kyle, Tex., supra* (internal quotation marks and citations omitted). "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Funeral Consumers All., Inc. v. Serv. Corp. Int'l*, 695 F.3d 330, 344 (5th Cir.2012) (quoted source omitted).

The FAC, however, does not include any facts to establish that any of the Advocacy Center's employees have any firm plans to return to the Louisiana Tech campus. In fact, the FAC suggests that plaintiff's employees reside in New Orleans, and therefore, it is highly unlikely that they would have occasion to frequent the areas of Louisiana Tech that are open to the public, such as the theater, the football stadium, the post office, Barnes & Noble Bookstore, or outdoor green spaces. The Advocacy Center already conducted its investigation, and there is no indication that it has any definite plans to assist any current or future qualified individuals who are impacted by the conditions on Louisiana Tech's campus. *Funeral Consumers All., Inc. v. Serv. Corp. Int'l, supra* ("the injury or threat of injury must be both real and immediate, not conjectural or hypothetical"). Accordingly, plaintiff has not established any *likely*, as opposed to speculative, threat of present or future harm to itself that could be redressed by injunctive relief.[11]

---

[10] Similarly, a declaratory judgment requires the same "actual controversy," as required under Article III. *Lawson v. Callahan*, 111 F.3d 403, 405 (5th Cir.1997). Therefore, where Article III's standing requirements are not met for plaintiff's other claim(s), it is not satisfied for purposes of declaratory relief. *Id.*, see also *Plumley, supra*.

[11] Plaintiff alleged that if its staff members with physical injuries are injured while visiting the Louisiana Tech campus, then it faces potential liability and increased insurance costs.

The court further observes that Louisiana Tech adduced evidence to show that it has "offered to make significant expenditures to improve access to existing facilities, and requested capital outlay to do so." (Decl. of Justin Kavalir [doc. # 14]).[12] Therefore, at least some of the issues raised by plaintiff's complaint may be moot, and the court concomitantly lacks jurisdiction to entertain them.[13]

      b)      <u>Associational/Representational Standing</u>

The Supreme Court has held that an association enjoys standing to bring suit on behalf of its members when "[1] its members would otherwise have standing to sue in their own right, [2] the interests at stake are germane to the organization's purpose, and [3] neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181, 120 S.Ct. 693, 704 (2000) (citing *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 343, 97 S.Ct.

---

(FAC, ¶ 36). However, not only is it unlikely that the Advocacy Center will send more employees to Louisiana Tech, it is purely speculative that any employee will be injured and that the Advocacy Center's insurance rates will increase as a result.

[12] Mootness impacts the court's subject matter jurisdiction. Therefore, the court may consider the affidavit for this purpose.

[13] Mootness is a threshold jurisdictional inquiry. *Louisiana Environmental Action Network v. U.S. E.P.A.*, 382 F.3d 575, 580-81 (5th Cir. 2004) (citation omitted) ("*LEAN*"). If the parties resolve a dispute, or if the dispute disappears because of changed circumstances, then the matter becomes moot and a case or controversy no longer exists. *See LEAN, supra; Piggly Wiggly Clarksville, Inc. v. Mrs. Baird's Bakeries*, 177 F.3d 380, 383 (5th Cir. 1999). "The case or controversy requirement of Article III of the Constitution requires a plaintiff to show that he and the defendants have adverse legal interests." *Bauer v. Texas*, 341 F.3d 352 (5th Cir. 2003) (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 57 S.Ct. 461 (1937)). The court lacks jurisdiction when plaintiff fails to satisfy Article III's "case or controversy" requirement. *Hosein v. Gonzales*, 452 F.3d 401, 403 (5th Cir. 2006).

2434 (1977).[14]

Plaintiff's ability to satisfy the second and third requirements of associational standing do not appear to be seriously in question here. Instead, defendants contend that the Advocacy Center cannot establish the first prong of the associational standing requirement because it has not alleged facts to show that it is a traditional membership group that has members or constituents. See *Ass'n for Retarded Citizens of Dallas v. Dallas Cty. Mental Health & Mental Retardation Ctr. Bd. of Trustees*, 19 F.3d 241, 244 (5th Cir.1994) ("*ARCD*").[15] However, "associational standing may be asserted by organizations that do not have official members, as long as the beneficiaries of the suit have 'indicia of membership' in the organization." *Advocacy Ctr. for Elderly & Disabled*, 731 F. Supp.2d at 593 (citing *Hunt*, 432 U.S. at 344, 97 S.Ct. 2434).

The Advocacy Center alleged that it

> is the designated Protection and Advocacy (P&A) system for individuals with disabilities in the State of Louisiana pursuant to the Developmental Disabilities Assistance and Bill of Rights Act of 2000 (PADD), 42 U.S.C. §§ 15001, et seq.; the Protection and Advocacy of Individual Rights Program (PAIR), 29 U.S.C. § 794e; and the Protection and Advocacy for Individuals with Mental Illness Act (PAIMI), 42 U.S.C. §§ 10801, et seq. (hereinafter collectively referred to as the "P&A Acts"). The P&A Acts mandate that Plaintiff protect and advocate for the rights of individuals with disabilities and, when appropriate, pursue legal, administrative, and other remedies to protect those rights. Plaintiff is a Louisiana non-profit corporation designated as an "eligible system" as those terms are used and defined in the P&A Acts.

(FAC, ¶ 2).

---

[14] "[T]the third requirement is of prudential and not constitutional magnitude, and is thus subject to abrogation by Congress." *Advocacy Ctr. for Elderly & Disabled v. Louisiana Dep't of Health & Hosps.*, 731 F. Supp. 2d 583, 593 (E.D. La .2010).

[15] In *ARCD*, the Fifth Circuit held that Advocacy, Inc., a federally funded organization, failed to establish associational standing's first prong at least, in part, because it was not akin to traditional membership groups where most of its clients "—handicapped and disabled people—[remained] unable to participate in and guide the organization's efforts." *ARCD, supra*.

In its brief, the Advocacy Center added that pursuant to the PADD, it is statutorily required to have a majority of its governing board be either individuals with disabilities or authorized representatives of these individuals. (Pl. Opp. Memo., pg. 19) (citing 42 U.S.C. § 15044(a)(1)(B)(i)-(ii), (5)(B)(i)-(ii). Furthermore, under the PAIMI, the chair and sixty percent of the members of the advisory council must be "individuals who have received or are receiving mental health services or who are family members of such individuals." *Id*. (citing 42 U.S.C. § 10805(a)(6)(B)-(C)).

Other district courts in this state have distinguished the reach of *ARCD*, on the basis that it did not address a PAIMI organization and, unlike the organization in *ARCD*, the constituents of PAIMI organizations bear many of the traditional indicia of membership in the organizations that sufficed to support associational standing in *Hunt*. *Advocacy Ctr. for Elderly & Disabled*, 731 F. Supp.2d at 596; and *Cooper v. Kliebert*, No. 15-751, 2016 WL 3892445, at *1–2 (M.D. La. July 18, 2016). The undersigned finds these non-binding decisions to be persuasive and follows them here.

Nonetheless, the Advocacy Center still is required to identify at least one specific member of the organization who was (and continues to be) adversely affected by the conditions at Louisiana Tech that the suit seeks to redress. *See City of Kyle, supra* (no evidence showing a specific member of the association that was impacted). Indeed, the Supreme Court requires "plaintiff-organizations to make specific allegations establishing that at least one identified member had suffered or would suffer harm." *Summers v. Earth Island Inst.*, 555 U.S. 488, 498, 129 S.Ct. 1142, 1151 (2009) (citations omitted); *see also Funeral Consumers All., Inc. v. Serv.*

*Corp. Int'l*, 695 F.3d 330, 344 (5th Cir.2012).

The Advocacy Center, however, did not identify any of its members who continue to suffer harm from the alleged non-ADA compliant sections of Louisiana Tech's campus such that they would benefit from the requested injunctive or declaratory relief. Moreover, while the Advocacy Center's mobility-impaired employees, Mr. Trunnell and Ms. Volion, arguably also could be considered members of the organization, the FAC did not include any facts to show that they face any likely threat of an injury that is real and immediate. *See discussion, supra*.

In sum, the court finds that the Advocacy Center failed to allege requisite facts to establish that it enjoys standing to pursue this suit for injunctive and declaratory relief either on its own behalf or on behalf of its employees and members.[16] In the absence of subject matter jurisdiction, dismissal is required. Fed.R.Civ.P. 12(b)(1).[17]

## II.     Failure to State a Claim Upon Which Relief Can Be Granted

Having determined that this court lacks subject matter jurisdiction to entertain this matter, the court cannot reach the merits-based Rule 12(b)(6) component of defendants' motion to dismiss because "[w]ithout jurisdiction the court cannot proceed at all in any cause; it may not assume jurisdiction for the purpose of deciding the merits of the case." *Sinochem Intern. Co. Ltd., supra*; (citation and internal quotation marks omitted); *see also Int'l Energy Ventures*

---

[16] Obviously, this finding does not constitute absolution for the alleged conditions at Louisiana Tech that precipitated the suit.

[17] In its latest brief, plaintiff alternatively asked the court for leave to amend its complaint. However, plaintiff already amended its complaint once in an attempt to bolster its standing allegations. Moreover, in the absence of the proposed second amended pleading, the court is not confident that plaintiff possesses any additional information or necessary facts to support standing.

*Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 209 (5th Cir.2016) (in the absence of subject matter jurisdiction, the court is unable to reach a merits-based Rule 12(b)(6) motion).

## Conclusion

For the above-assigned reasons,

IT IS RECOMMENDED that defendants' motion to dismiss for lack of subject matter jurisdiction [doc. # 13] be GRANTED, and that plaintiff's complaint, as amended, be DISMISSED, WITHOUT PREJUDICE.

IT IS FURTHER RECOMMENDED that the remainder of defendants' motion, including the motion to dismiss for failure to state a claim upon which relief can be granted [doc. # 13] be DENIED, as moot.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL**

**FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 6th day of March 2019.

_____
KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE